Next case for argument is 23-1075, D3D Technologies v. Microsoft. Thank you. May it please the court. This is a related patent. This is a CIP to the 771 that we were just discussing. Judge Rainey, you asked if the subtracted issue was basically the same issue. It is to large measure. I would just point out that in this case, although the subtracted limitation appears in dependent claims in the same way as it appears in the independent claims of 771, the board actually didn't adopt and express construction for subtracted in this case. They simply said that D3D's construction is wrong and that the word subtracted needs to be read more expansively, but they didn't say what that means. It's hard to tell from the board's decision exactly what construction they were using other than it wasn't that offered by D3D. For the same reasons as we've just discussed in the previous case, we think the construction of subtracted should have been the one proposed by D3D. Just again, as a housekeeping matter, you've got two separate issues and the convergence point deals with all of the claims? Yes, it does. The other issue with regard to Jones and Schoolman, that is a subset of those. If we were hypothetically to agree with the board on the first, we don't reach the second? You still reach the second, Your Honor, because the subtracted limitation is an additional limitation added in Claims 2, 8, and 14. But if we were to affirm on the 1-18 on convergence point, that issue is still open? In other words, doesn't the viewpoint issue on 1-18 resolve everything? It would on Murphy and Guam, Your Honor, yes. Not on Jones and Schoolman, but yes. As to Murphy and Guam, it would resolve all the issues. So if the claims go down there, there's no reason to reach the second issue? I would agree. So why don't you start with the convergence point then? Right. So as to the convergence point issue, Your Honor, let me start with the idea that that limitation requires that the convergence point be shifted without changing the initial viewpoints. That is the position, sort of virtual position in which the viewer's eyes would be. In our briefing, we walk through the antecedent basis limitations in the claim and that requires that these initial viewpoints be the ones that are still in play during the shifting of the convergence point. Let me show you how we get there. The convergence point limitation says... And that's 1-H. We're talking about 1-H? Yes, Your Honor. We're in a convergence point of said image for said left eye and said image for said right eye is shifted. So you notice it's said image for said left eye and said image for And we look at the two immediately preceding displaying steps. First one has displaying an image for said left eye and the next one is displaying an image for said right eye. Those are the said left eye and right eye images from the convergence point shifting step. And in each case, those images for the left eye and the right eye are based on said viewpoints, the respective viewpoints for the left eye. Okay, but I think Microsoft's response to that, so you can respond to Microsoft, which is that their focus also on the other remaining language in 1-H, which does provide a different perspective of the volume of interest to said user. And so I think they construed this limitation as being broad enough to encompass changing said image by changing the initial viewpoints used to create the image, right? Well, if that's the case, it's just wrong, Your Honor. It's just wrong in what is it? What they're saying? Right. The limitation itself is specific. It's saying changing the convergence point of these two images that you already have, the images that are based on the initially selected viewpoints. It's not a case of introducing new images somehow or changing those images somehow. The claim is specific about saying which convergence point is being shifted. It's the ones that are based on the images you already have in front of you. There are no new images at this point. And nobody disputes that in the combination of Murphy and Guang, and it's the Guang teaching that's relied on for this particular point, nobody disputes that Guang teaches changing the viewpoints when there's a shift in the convergence point. Microsoft's petition and even the board's opinion show the image of Guang that was relied upon, I think it was figure 19 from Guang. You can see this, for example, at page 106 of the board's decision. You see that when there's a shift in the convergence point, in order to give this shifted perspective, there's a change in the viewpoint. That's the little eyeballs that are at the bottom of that figure. You see how they change in order to provide that shifted convergence point. Well, if that's the teaching that one gets from the combination of the references, that's different than what's recited in the claim. Because as we say, the way the claim is constructed, the shift in the convergence point is with respect to the original images, and that means the original viewpoints. That's the first part of the shifting convergence point, and as I say, that's the issue with respect to the Murphy-Guang combination. The second part of the shifted convergence point argument really pertains to the Jones reference. Mr. Fein, let me ask you on that point. Isn't there in Murphy, I guess, in 1491-92, paragraph 20, where it discusses the concept of eye tracking, so that even if your view with respect to what the claim requires is correct, even if you accept that, you would still have Murphy setting forth a proposition where there would be no change in viewpoint because the eye and the head would shift. There wouldn't be a movement of the body or the head. Well, that of course was not the basis of Microsoft's petition, Your Honor. Microsoft's petition actually said that Murphy doesn't teach how you do this, and they rely on Guam for teaching this limitation. Now, the part that you're referring to does talk about the way, but it doesn't say anything about how that operation is completed. That's why Microsoft had to rely upon Guam, and when you go to Guam, you see that, oh, when that type of shift in convergence point, you're looking at a different part of the image. There's a slight movement. There's a slight movement, and the claim just doesn't cover that situation. What about, though, getting back to what we were talking about, Murphy, that section there, if someone is sitting there and looking at something, and their eye moves like that, they haven't changed their viewpoint, have they, in terms of what you see in Guam with that slight movement? If you're just talking in the abstract, Your Honor, if you change what you're looking at without moving your head, I would agree you haven't changed your viewpoint. That it does not? It does not change the viewpoint. If you change what you're looking at in the image, and you don't move your head, yeah, I think everybody could agree that you don't change the viewpoint, different than what actually Guam teaches. I see I'm into the rebuttal time, Your Honor. Let me just quickly address the way the convergence point comes up with Guam, excuse me, with Jones. And that is, in Jones, there is actually no shifting of the convergence point. The user is always looking at the same point in the data set. This is in the figure seven, A through C, in Jones. The viewer's gaze, although the point moves in space, the viewer's always focused on that same point, and so there's no actual shift in the convergence point. There may be a change in the convergence angle, that is, the direction the eye's looking, but there's no actual change in what the viewer's looking at. I'll reserve the rest of the time for a little while. May it please the Court, Nitika Fiorella again for Appelli Microsoft. So can you start just with that housekeeping matter you started with your friend about what needs to be decided here if we do certain things? Yes. All this Court needs to decide is whether the Board properly refused to limit that shifting convergence point limitation the way that D3D suggests in terms of having all viewpoints be unaltered. Should this Court agree with the Board's construction on that, that would dispose of all challenge claims one through 18 based on the Merkang-Wong references. So how we decide the, quote, viewpoint issue as it plays into the converging point resolves the case? Yes. You'd need to go no further than that. What do you say in response to Mr. Fahmy's position that, assuming he's correct with respect to what the claim requires, that nevertheless Murphy at 1491 through 92 paragraph 20, which bridges those pages, provides viewing a converging point without shifting a viewpoint? We agree with the Board on this. The Board, and this is at A112 note 22, specifically cited the very paragraph Your Honor is referring to, paragraph 20, and says that no one has actually disputed that Murphy teaches unaltered viewpoints because of this eye tracking that's described. And we did talk about that in our petition. It's at, I believe, 241. When we're discussing Murphy in the background, we talk about how the, Murphy's system tracks the altered gaze to identify a new convergence point. What we went further to say is Wong actually talks about how you do it. So once you have shifted the convergence point, Wong says, okay, create another 3D rendering based on that new convergence point. As the Board found and credited our experts' testimony, which just to be clear, Your Honors, here is fully unrebutted because D3D did not submit an expert declaration at all in this proceeding. The Board credited Dr. Zaida as saying, all right, well, if Wong is teaching just that shifting of convergence points, I don't need to take every single aspect of Wong, including the shifted eye, excuse me, the shifted viewpoints, because Murphy already says you don't need to change the viewpoints. So that was perfectly presented in our petition, but to go back to Your Honors' question, even if we accept D3D's construction, the substantial evidence supports the Board's findings based on Murphy alone, and then in combination with just the shifting viewpoints from Wong. Can you sign this for us, 241 of the Joint Appendix? Yes, Appendix 241. It is that top paragraph, this is from our petition, and it describes when the surgeon's in a different region of interest, Murphy's system tracks the altered gaze to identify a new convergence point, and it is citing that paragraph 20 of Murphy. What I was discussing, Mr. Fahmy. So just to step back, though, Your Honors, I mean, you could just go straight there and find that substantial evidence supports the Board's findings with respect to Murphy and But we do believe that the proper construction is the one that the Board adopted. Nowhere in this 1H limitation is there any restriction on what happens to the viewpoints. And the specific... Except his argument that there's an antecedent basis for the said image. Yes, and so I think there's two ways to look at this. There's the said image that comes before in the claims, and then there's the said viewpoints that come later in the claims. And it sounds like there's two separate arguments on D3D's side as to how those play into the convergence limitation. So I'd like to address both quickly. On the said image, no one is disagreeing that there is a left image and a right image, and each of those have convergence points that are being shifted in that limitation. Where we believe D3D is overreading is saying that that said image can't have any even slightly different content. So the steps above that they're referring to are talking about displaying a said image based on three parameters. An initial viewing angle, a viewpoint, and a volume of interest. So it's the display of the image that's based on these parameters. Once you get to the convergence point limitation, the whole point of these claims is I have this volume of interest, I have a first viewing angle, I'm looking at it in a certain way. Now I want to see it from a different perspective. I want to change it a bit. So that's the purpose of the convergence point limitation, and it is not then limited to the same exact image. It's limited in the sense that you're still looking at a left and a right, but that actual image can be displayed differently. And that's what the claim is talking about. And the specification supports this, because the specification talks about differing viewpoints. There's two places I'd like to invite your honors attention to. The first is at appendix 162 to 163, starting at column 8, line 64. And this is the actual portion of the specification that is describing selecting a viewpoint. And what does it say? It says, and this is at line 67, the software selects an initial viewpoint for the left and right eyes respectively. There would be a default value, which could be adjusted during the continuation of this process. So it is already anticipating that you can change those viewpoints as the process goes on. Then further on that same page, A163, column 10, now I'm looking at line 24, it talks about method 450, begins with the processing block 452, which discloses the user selecting an alternative viewing angle. And that's the second half of this claim. This step allows the user the flexibility to view the volume of interest from different angles, including from any viewpoints in the XYZ space. Again, describing that it is not limited to keeping the viewpoints the same. And that's not all, your honors. The very next paragraph, starting at line 32, tells you how you do this with an alternative viewing angle. And it says, the software is going to rotate the volume to the desired viewing angle, and the new left and right viewpoints are calculated in the manner described above. So the specification is entirely consistent with the idea that the viewpoints can and do change throughout this process. And again, as the board noted, there is no rebutted testimony here whatsoever. None from an expert, D3D didn't even point to anything in the specification in support of their more restrictive reading. I'm happy to take any questions, your honors, on the other grounds. But since we believe this disposes of the issues, I can also just give the time back to the court. Thank you. Your honors, let me address what my learned friend had to say. She referred to the petition, appendix pages 240 and 241. I think this portion of the petition is instructive because here Microsoft admits, Murphy does not explain how the 3D model being displayed should be modified in view of the altered gaze. Does not explain. That's why they had to rely upon Guang, and I heard nothing from Microsoft disputing that Guang teaches changing the viewpoints. Now, as to whether that change of the viewpoints is required in this limitation, it is. My learned friend referred to the specification at column 8. This is appendix 162. And yes, we would agree that the initial selection of the viewpoints, you can pick whatever viewpoints you want. But the point is, once you pick those viewpoints, it is those images for which the convergence point is changed. An image for said left eye based on said initial viewing angle, said viewpoint, and said volume of interest. That is the image. That defines what the image is. This is not just an artifact of the display. It is a characterization of which image is involved. And same for the right eye. Microsoft counsel then referred to the discussion concerning figure 9 in column 10 of the patent, appendix page 163. But by now we are past the shifting convergence point step. And the discussion with respect to figure 9 concerns selecting an alternate viewing angle. And yes, the claim says that when you select the alternate viewing angle, you do this reorientation. But even then, it is still said viewpoint. Throughout the claim, the viewpoint is invariant. I think those were the main points that Microsoft addressed during the argument. I'm happy to take any other questions you might have, Your Honors. Thank you. Thank you. Thank both sides in the case.